# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| DR. SUBAH PACKER Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-cv-00008-TWP-DKL |
| | ) |
| TRUSTEES OF INDIANA UNIVERSITY | ) |
| SCHOOL OF MEDICINE, and | ) |
| DR. MICHAEL STUREK, in his official | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Trustees of the Indiana University School of Medicine, and Dr. Michael Sturek ("Dr. Sturek"), in his official capacity (collectively, "IUSM") (Filing No. 113). Plaintiff Subah Packer, Ph.D. ("Dr. Packer") asserts claims against IUSM under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") for gender discrimination and retaliation; violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"); breach of contract; and a claim for unpaid wages under the Indiana Wage Claim Statute, Ind. Code § 22-2-9-1 *et seq*. For the reasons set forth below, IUSM's Motion is **GRANTED**.

## I. BACKGROUND

The following facts are not in dispute and are viewed in the light most favorable to Dr. Packer as the non-moving party. Dr. Packer began working for IUSM in 1988, with the formal title of Assistant Scientist/Assistant Professor (Part-Time) in IUSM's Department of Physiology and Biophysics ("Physiology Department"). IUSM is located on the Indianapolis campus of

Indiana University ("IUPUI")[1]. In 1994, she was appointed to the tenure-track position of Assistant Professor. In 1999, Dr. Packer unsuccessfully sought tenure. IUSM Dean Craig Brater ("Dean Brater") was opposed to Dr. Packer's initial promotion to Associate Professor and to her grant of tenure. Dr. Packer subsequently filed a grievance, and in 2001 she was awarded tenure and a promotion after a *de novo* review, over the objection of Dean Brater.

IUSM's three primary missions are education, research and service. IMSU receives a small percentage of funding for its budget from the state, and the remaining operating costs are generated by tuition, payments for clinical services, grants, and gifts. As part of the yearly budgeting process, each department at IUSM receives an allocation from the school that includes funding from various sources. However, the allocation covers only a portion of what is needed to fund the department's activities. For departments that do not have a clinical practice (such as the Physiology Department), the primary source of additional funding is generated from grants from organizations such as the National Institutes of Health ("NIH") and the National Science Foundation. These grants typically include support for both "direct" and "indirect" costs of the research, which includes "out of pocket" expenses and "overhead" expenses, respectively. Since at least 2004, the Chair of the Physiology Department, Dr. Sturek, implemented various compensation systems to reward faculty members who had obtained major grants or made significant efforts to do so. He generally had declined to award merit increases to faculty members who lacked funding and/or who failed to make satisfactory efforts to seek such funding.

Each academic year, the Physiology Department evaluates all its faculty members' performance in the areas of teaching, research, and service. Generally, a faculty member's

---

[1] In 1969 Indiana University ("IU") and Purdue University merged their many programs and schools to create Indiana University-Purdue University Indianapolis, hereinafter "IUPUI". *See* http://www.iupui.edu/about/history/index.html. (Last visited December 16, 2014).

performance was considered satisfactory overall if he or she either (1) meets the minimum standards for satisfactory performance in all three areas, or (2) has excellent performance in either teaching or research. Within the research requirement, department guidelines had a publication and a funding component. Faculty members were expected to publish a minimum of one research paper as a first or senior author per year, averaged over a three year period. They were also expected to be the principal investigator on an extramurally funded research project, or receive at least 15% salary support as a co-investigator (or via subcontract) on a research project funded by a national research organization. At a minimum, faculty members were required to make significant efforts to secure extramural funding in support of research, as evidenced by the submission of a minimum of two grant applications or revisions per year that received satisfactory scores, and were required to provide evidence of such applications and scores to the Physiology Department Chair.

## A. Dr. Packer's Performance Reviews

Sometime after Dr. Sturek became Chair of the Physiology Department, he voiced his desire to have Dr. Packer "out of the department." In conversations with the Interim Dean, Dr. Frederick Pavalko, Dr. Sturek discussed that he thought Dr. Packer would be better suited as a teacher rather than a researcher, because she was not securing external grant funding. (Filing No. 125-2, at ECF p. 14-16). In 2004 Dr. Sturek assigned Dr. Packer a "used" conference room as her only space to be used as both her lab and office. Later, he assigned Dr. Packer to a utility conduit room, as her office. Her lab equipment purchased with her start-up funds and independent grants was put into storage in 2004 and remained in storage.

Dr. Packer received ratings of unsatisfactory on her 2005-06, 2006-07, and 2007-08 evaluations. In 2008, a Review and Enhancement ("R&E") Committee was established to conduct

a post-tenure review of Dr. Packer due to her receipt of two consecutive unsatisfactory evaluations from the Physiology Department. The purpose of the R&E process was to identify and assist faculty whose performance has been unsatisfactory, and to provide a structure for the preparation and implementation of development plans to improve performance. The R&E Committee found that Dr. Packer had strong effort and performance in teaching, but was not achieving departmental research funding goals and that her performance in research, although modest with respect to productivity, was minimally satisfactory. (Filing No. 125-11, at ECF p. 5.) The panel wrote that Dr. Packer attempted to sustain activity in her research laboratory and to secure extramural funding, thus her modest level of productivity could not be attributed to lack of effort. *(Id.)* Ultimately, they found that Dr. Packer devotes significant effort to her professional activities and makes valued contributions to the missions of IUSM and concluded that Dr. Packer did not require the assistance of the R&E Committee. (Filing No. 125-11, at ECF p. 6.)

In 2008-09, Dr. Packer received an overall satisfactory evaluation despite not publishing any research manuscripts or submitting grant applications that received satisfactory scores. The overall satisfactory evaluation was the result of being rated excellent in teaching based upon receiving the national Guyton Educator of the Year Award. However, Dr. Packer again received unsatisfactory evaluations for the 2009-10, 2010-11, and 2011-12 academic years based upon her failure to publish original research manuscripts, failure to submit extramural grant applications, and failure to meet objectives of a performance improvement plan put in place in 2011.

In 2013, Dr. Sturek initiated dismissal proceedings for Dr. Packer, thus she did not receive a formal evaluation for the 2012-13 academic year. IU's Academic Handbook provides that a tenured faculty member may be dismissed for serious personal or professional misconduct. The IUPUI Supplement to the Academic Handbook defines such misconduct to include persistent

4

neglect of duties or persistent failure to carry out the tasks reasonably expected of a person in that position. On July 16, 2013, Dr. Sturek recommended to Dean Brater that IUSM dismiss Dr. Packer because her poor performance amounted to persistent neglect of duties and failure to carry out expected tasks, noting that her performance had been rated as unsatisfactory on six of nine annual reviews, that she failed to comply with several aspects of her 2011 performance plan, and based upon negative student reviews for one of the courses she taught in fall 2011. Dean Brater submitted Dr. Sturek's recommendation and Dr. Packer's response to a three-person Conduct Characterization Committee, and a majority of the committee concluded that Dr. Packer's consistent unsatisfactory performance met the definition of "serious misconduct." On November 22, 2013, Chancellor Bantz notified Dr. Packer that he supported the recommendation for dismissal based on misconduct, specifically persistent failure to meet departmental standards applicable to faculty. He advised Dr. Packer that her effective dismissal date would be December 6, 2013.

**B.     Dr. Packer's Grievances**

Throughout her employment at IUSM Dr. Packer filed several grievances. Her first grievance was filed in 2000 alleging unequal pay and failure to grant her tenure. Dr. Packer's second grievance, again for unequal pay, was filed in 2002 after she alleged she did not receive raises following her grant of tenure and promotion, and for two consecutive research awards in 2001 and 2002. The IUSM Faculty Grievance Committee recommended in Dr. Packer's favor, but she did not receive a pay raise until 2003. In 2010, Dr. Packer filed a complaint with the IUPUI Office of Equal Opportunity ("OEO") and an IUPUI Faculty Grievance, which included complaints about her teaching load, salary, and laboratory space. An independent Faculty Board of Review ("FBR") was appointed to address the grievance. The FBR largely rejected Dr. Packer's

5

allegations of unfairness, including her complaint about inferior laboratory space, finding that the conditions of Dr. Packer's work were not substantially different than other faculty members. Dr. Packer's OEO complaint was separately investigated by Kim Kirkland ("Ms. Kirkland"), Director of the OEO. Ms. Kirkland concluded that Dr. Packer's complaint was not substantiated. Dr. Packer filed her complaint with the Equal Employment Opportunity Commission ("EEOC") in 2011, and filed her initial civil complaint in this Court in January 2012.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

6

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

As stated above, Dr. Packer asserts claims against IUSM under Title VII for disparate treatment discrimination based on her gender, hostile work environment, and retaliation. She also alleges violation of the Equal Pay Act and asserts state law claims for breach of contract and unpaid wages under the Indiana Wage Claim Statute. The Court will address claim each in turn.

### A. Title VII Claims

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who lawfully seek to or actually do participate in the process of investigating or pursuing a Title VII discrimination claim. 42 U.S.C. §2000e-3(a).

Plaintiffs alleging discrimination under Title VII may prove such discrimination using either the direct or indirect method of proof. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849–50 (7th Cir. 2008). The direct method requires that the plaintiff produce evidence that the defendant was motivated by animus toward a protected class when she suffered some adverse employment action. *Id.* This may be done via direct evidence, which would entail something akin to an admission of discriminatory motive by the employer, or by presenting a "'convincing mosaic' of circumstantial evidence" that would permit the same inference without the employer's admission. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Rhodes v. Ill. Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004)).

7

### 1. Disparate Treatment Discrimination

Dr. Packer alleges that she was paid less and terminated because of her gender, and asserts that she has direct evidence of discriminatory intent. Direct evidence is that which, if believed by the trier of fact, will prove the particular fact in question without reliance on presumption or inference. *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999). Dr. Packer argues that more favorable treatment of male faculty who had no NIH grants, and the fact that no female faculty members have been hired into the Physiology Department since Dr. Sturek became Chair, are direct evidence of discriminatory intent. In support of her first argument, Dr. Packer asserts that "Even though they did not have the NIH grants that Packer also supposedly lacked, they [male faculty] got their labs, got promoted, and have received substantial yearly pay raises". (Filing No. 125 at 21.) And, Dr. Packer cites to a chart titled "2011-2012 IUSM Physiology Associate Professor Salaries" for her assertion that no female faculty have been hired under Dr. Sturek's term as department Chair. (Filing No. 125-18.) The chart, however, lacks essential details about performance from which a jury could reasonably determine that Dr. Packer was treated differently from similarly situated employees outside of her protected class. Dr. Packer's other "evidence," is insufficient as direct evidence for two reasons. First, she only generally cites to two depositions and her own affidavit in support of her assertions. This does not satisfy the requirement under Rule 56(c)(A), which requires the party responding to a summary judgment motion to "cit[e] to particular parts of materials in the record" in order to support her assertion that there is a genuine issue of material fact. Fed. R. Civ. P. 56(c)(A). Second, and more importantly, Dr. Packer's asserted facts do not meet the definition of "direct evidence," or even a "convincing mosaic" of evidence under the direct method. The salary chart and vague assertions do not point directly to gender discrimination without resorting to inferences, and even requires some speculation that

these facts prove a causal relation between the decision to terminate Dr. Packer and discriminatory intent.

Dr. Packer's claim does not fare any better proceeding under the *McDonnell Douglas* indirect burden-shifting method. Under the *McDonnell Douglas* scheme, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To state a prima facie case of "disparate treatment" gender discrimination under Title VII, a female plaintiff must show that she: (1) is a member of a protected class, (2) is performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than at least one similarly-situated male colleague. *Lim v. Trus. of Ind. Univ.,* 297 F.3d 575, 580 (7th Cir.2002). Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *Id.* Once the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. Pretext requires more than showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir.2000).

Dr. Packer is a member of a protected class under Title VII. For purposes of this analysis, the court will accept that she has suffered an adverse employment action. With respect to the remaining factors, Dr. Packer has not established that she was performing her job satisfactorily or that she was treated less favorably than at least one similarly-situated male colleague. She provides no analysis of, or evidence supporting, these elements of her *prima facie* case. And, even if the Court were to find that Dr. Packer has established a *prima facie* case, she cannot satisfy the remaining requirements. Dr. Packer asserts only that Dr. Sturek "boasted he was following orders to get rid of her" as proof of pretext, but she does not cite to any admissible evidence to support

9

this claim. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). Moreover, Dr. Packer does not cite to any evidence that Dr. Sturek's motivation to have her terminated from the department was due to her gender. Because Dr. Packer has not met her burden of showing that there are at least questions of material fact that support her *prima facie* case of gender discrimination, IMSU is entitled to summary judgment on her Title VII disparate treatment claim.

   2.   **Retaliation**

Next, Dr. Packer alleges that IUSM retaliated against her following her complaints to the IUPUI Office of Equal Opportunity and the EEOC. A plaintiff may establish a *prima facie* case of retaliation using either the direct or indirect method. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. *Id.* at 644. Under the indirect method, the plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *Id.*; *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Under this method, once the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate reason for the adverse employment action. *Haywood*, 323 F.3d at 531. Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Dr. Packer does not offer sufficient evidence to support her retaliation claim under either the direct or indirect method. With regard to the direct method, she offers only her self-serving[2] affidavit in support of her claim, much of which is not based upon Dr. Packer's personal knowledge, and does not demonstrate that there is a causal connection between her statutorily protected activity of filing the OEO and EEOC complaints, and the alleged adverse employment action(s). *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment.") (emphasis in original). The only argument she makes is that the alleged adverse actions occurred in close temporal proximity to her complaints, which alone is not sufficient to prove causation. *Stone*, 281 F.3d at 644 ("[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."). Merely arguing that the alleged retaliatory acts occurred in close temporal proximity to the complaints of discrimination is not enough for Dr. Packer to create an issue of fact under the direct method.

Dr. Packer also does not cite to any evidence from which a reasonable jury could find that she can satisfy the elements of her *prima facie* case under the indirect method. She does not offer any evidence showing that the reason given for her termination – insufficient performance in research efforts – was pretext for discrimination, again relying upon the unsupported argument that Dr. Sturek was ordered to "get rid of her." Even if the Court were to accept Dr. Packer's argument that Dean Brater wanted her terminated from IUSM because she received tenure over

---

[2] The Court recognizes that the term "self-serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment. See *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Rather, the Court refers only to those portions of the affidavit which are hearsay, conclusory statements and not supported by evidence in the record.

11

his objection in 2001, and that Dr. Sturek was acting at the direction of Dean Brater, this motivation has no connection to Dr. Packer's OEO and EEOC complaints – filed in 2010 and 2011 – that are relevant to this case, which occurred well after she was awarded tenure. Because Dr. Packer has not adequately supported her claim that she was subject to an adverse employment action on the basis of engaging in protected activity, her retaliation claim fails and IUSM is entitled to summary judgment. *Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008) ("[S]keletal treatment of a claim does not facilitate well-informed judicial decision-making; indeed, it essentially invites the court to disregard the claim at issue.").

### 3. Hostile Work Environment

Dr. Packer also asserts that IUSM violated Title VII by subjecting her to a hostile work environment. In order to maintain an actionable claim of hostile work environment, Dr. Parker must first demonstrate that a supervisor or coworker harassed her because of her sex. *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 462 (7th Cir.2002). She must also show that the harassment was both subjectively and objectively "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Id.* at 462–63.

Dr. Parker does not include a separate argument in support of her hostile environment claim, rather she includes it with her retaliation argument. Her hostile environment discrimination claim is merely a restatement of her retaliation claim, asserting that IUSM created a hostile environment by taking "retaliatory action in temporal proximity to the exercise of protected rights" by moving her to inferior lab space and giving her poor performance reviews. (Filing No. 125, at ECF p. 20.) In support of her claim, Dr. Packer directs the Court to "a timeline with the events and retaliations," which in reality is her entire affidavit. The Court is not required to scour the record in search of supporting evidence. And, as stated earlier, Dr. Packer's affidavit makes factual

12

assertions without an evidentiary basis, and contains hearsay, speculation and conclusory statements. Dr. Packer does not allege that she was subjected to treatment that was offensive or abusive because of her gender. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat [ion]* . . . because of . . . sex.'") (emphasis in original). Moreover, Dr. Packer may not simply restate her retaliation claim as one for hostile work environment sexual harassment merely because the actions of IUSM made her work environment stressful or unpleasant. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977 (7th Cir. 2004) ("Not every unpleasant workplace is a hostile environment.") (additional citations omitted). It is clear that Dr. Packer has not established a genuine issue of material fact on whether she was harassed *because of* her gender, therefore, IUSM is entitled to summary judgment on Dr. Packer's hostile work environment claim.

**B.     Equal Pay Act Claim**

Dr. Packer asserts a claim that IUSM violated the Equal Pay Act by paying her less than male employees in her department. "To establish a prima facie case of wage discrimination under the EPA, [a plaintiff] must show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). If a plaintiff is able to establish her *prima facie* case, the burden shifts to the employer to establish one of the defenses enumerated in the statute, including (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1). The statute of limitations for an EPA claim is three years for willful violations and two years for any

other violation; thus, at the latest, the relevant time period for consideration of Dr. Packer's wage claim goes back to January 4, 2009. 29 U.S.C. § 255(a).

Dr. Packer has not shown that she can satisfy any of the elements of her *prima facie* case under the EPA. She has not identified any male employee with substantially similar skill, effort, and responsibilities, performing under similar working conditions, who was paid more than she was since January 4, 2009. Dr. Packer merely alleges in her statement of facts that she was not given raises after receiving two teaching awards, but does not offer any evidence that this resulted in a pay disparity based upon her gender. Furthermore, she does not address IUSM's defenses that justify the salary disparities Dr. Packer complains of, which included her unsatisfactory evaluations, failure to publish manuscripts, and failure to generate research support and funding. In her briefing, Dr. Packer did not dispute IUSM's criteria which resulted in unsatisfactory ratings of Dr. Parker in Research. Dr. Packer has not provided any evidence in support of her assertion that these gender-neutral factors were not applied in good faith, and relies on speculation and unsupported legal conclusions to argue that her shortcomings were similar to male employees' shortcomings, yet she was still paid less. Because Dr. Packer has not shown that she can satisfy the elements of her *prima facie* case, and because she has not presented any facts that negate the good faith nature of IUSM's justifications for any pay disparities, her EPA claim fails and IUSM is entitled to summary judgment.

## C. Indiana Wage Claims Statute

Dr. Packer asserts a claim against IUSM for unpaid wages in violation of Indiana's Wage Claims Statute. IUSM argues that Dr. Packer's wage claim is barred because she failed to comply with the Wage Claims Statute's exhaustion requirement. Indiana Code § 22-2-9-4 requires an employee who has a claim under the Wage Claims Statute to first exhaust an administrative remedy

14

with the Department of Labor before filing a lawsuit. *Quimby v. Becovic Mgmt. Grp. Inc.*, 962 N.E.2d 1199, 1200 (Ind. 2012). This requirement is "well settled," and Indiana case law does not provide for any exceptions for claims under $6,000.00, as Dr. Packer attempts to argue. *Id.*; *see also St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002) ("Claimants who proceed under [the Wage Claims Statute] may not file a complaint with the trial court. Rather, the wage claim is submitted to the Indiana Department of Labor."); *Hollis v. Metro. Sch. Dist. of Pike Twp.*, No. 1:12-CV-00508-TWP, 2013 WL 5656088, at *5 (S.D. Ind. Oct. 15, 2013) (claim under the Wage Claims Statute would be barred because plaintiff failed to exhaust administrative remedies). Dr. Packer's argument misapplies the statute, which provides that the commissioner of labor is authorized to take assignments of wage claims of less than $6,000.00 and has the power to prosecute actions for the collection of such claims; nothing in this section limits the Department of Labor's jurisdiction over claims that are greater than this amount. I.C. § 22-2-9-5(a). Because Dr. Packer did not submit her wage claim to the Department of Labor prior to filing her complaint, she failed to exhaust her administrative remedy and IUSM is entitled to summary judgment.

**D.     Breach of Contract**

Finally, Dr. Packer asserts a breach of contract claim based upon her tenure status. However, she cites no Indiana law stating that a grant of tenure alone creates a contract right. The tenure policies that Dr. Packer relies upon to show that she has a contract with IUSM are contained in IU's Academic Handbook, which states in its preamble that it does not create a contract and does not create any legal rights. (Filing No. 113-20, at ECF p. 20.) Dr. Packer also cites to an excerpt from an Academic Guide (Filing No. 125-16) which addresses IU's policies on faculty tenure; however, the information is similar to that which is contained in the Academic Handbook,

15

and the Academic Guide is only applicable to employees at the Indiana University Bloomington campus, not IUPUI.³ Because the Academic Handbook explicitly disclaims any creation of a contract, Dr. Packer cannot rely upon these policies as a basis for her breach of contract claim. *Orr v. Westminster Village North*, 689 N.E.2d 712, 721 (Ind. 1997) (employee handbook containing contract disclaimer does not create a unilateral employment contract); *see also Hayes v. Trustees of Indiana Univ.*, 902 N.E.2d 303, 312 (Ind. Ct. App. 2009) ("Given our Supreme Court's holding in *Orr*, we decline to find that the Human Resources Manual constituted a contract under which Hayes could maintain a breach of contract claim."). Dr. Packer did not provide copies of the "contract letters" from Department Chair Rhoades, Executive Vice Chancellor and Dean of Faculties William Plater, IUPUI Chancellor Gerald Bepko, or President Miles Brand, which she also claims created an employment contract. Because there is no evidence that these documents meet the legal definition of a contract, Dr. Packer may not base her breach of contract claim on these letters, particularly because she has already stated that the pertinent policies regarding tenure – and which she claims IUSM breached – are in the IU Academic Handbook. The Court finds that no enforceable contract existed between Dr. Packer and IUSM upon which she can base a breach of contract claim, and thus IUSM is entitled to summary judgment on this claim.

## IV. CONCLUSION

---

³ Dr. Packer does not include the entirety of the Academic Guide in support of her opposition to summary judgment. However, the web address provided on the excerpt does provide access to the entire guide, which states that it is for the "administrative governance on the Bloomington campus." Indiana University Bloomington Academic Guide, https://www.indiana.edu/~vpfaa/academicguide/index.php/Main_Page (last accessed December 11, 2014). In addition, the Academic Guide states "In any instance in which the Principles and Policies conflict with the *Academic Handbook* or any other applicable Indiana University standards on promotion and tenure, the system-level statutes of the University shall be superordinate." Indiana University Bloomington Academic Guide, https://www.indiana.edu/~vpfaa/academicguide/index.php/E._Tenure/Reappointment/Promotion/Salary#Statement_of_Principles (last accessed December 11, 2014). Dr. Packer was located at the IUPUI/Indianapolis campus, thus these policies would not apply to her, and the relevant policies are contained in the IU Academic Handbook.

For the reasons set forth above, the Court finds that Dr. Packer has not shown that there are questions of material fact with respect to her Title VII, Equal Pay Act, Wage Claims Statute, and breach of contract claims, and IUSM is entitled to judgment as a matter of law. Therefore, IUSM's Motion for Summary Judgment (Filing No. 113) is **GRANTED**, and Dr. Packer's claims are **DISMISSED**.

**SO ORDERED.**

Date: 12/22/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Amanda L. Shelby
FAEGRE BAKER DANIELS LLP - Indianapolis
amanda.shelby@faegrebd.com

Edward E. Hollis
FAEGRE BAKER DANIELS LLP - Indianapolis
edward.hollis@faegrebd.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Meghan Virginia Marie Ogren
ITTENBACH JOHNSON KOELLER ABRAMS
mogren@ijlegal.com

G. Douglas Abrams
ITTENBACH JOHNSON TRETTIN & KOELLER
abrams@ijlegal.com

John F. Ittenbach
ITTENBACH JOHNSON TRETTIN & KOELLER
jfittenbach@IJTKlaw.com